Morse Edward Stewart
(503) 429-7504
C/o 57985 Timber Road
Vernonia, Oregon [97064]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MORSE E. STEWART,<br><br>    Plaintiff,<br>v.<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>U.S. BANK NATIONAL ASSOCIATION<br>NORTHWEST TRUSTEE SERVICES, INC., Et al.,<br>    Defendants. | Case No. 3:09-CV-687-PK<br><br>SECOND AMENDED COMPLAINT PER FINDINGS AND RECOMMENDATIONS REGARDING FRAUD IN TRUSTEES' SALE NO. 7104.10845<br>AND<br>JOINING CORNERSTONE MORTGAGE AND BNC MORTGAGE, INC.<br><br>IN ADMIRALTY<br><br>Submitted by: Secured Party Creditor for self and Plaintiff |
| Morse Edward Stewart, *Secured Party Creditor, In Propria Persona, Third Party Plaintiff,<br>v.<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; U.S. BANK NATIONAL ASSOCIATION; NORTHWEST TRUSTEE SERVICES, INC.;<br><br>Defendants hereby joined:<br>CORNERSTONE MORTGAGE;<br>BNC MORTGAGE, INC.<br>Et al,<br>    Third Party Defendants. | |

JURISDICTION

TITLE 28--JUDICIARY AND JUDICIAL PROCEDURE

PART IV--JURISDICTION AND VENUE

CHAPTER 85--DISTRICT COURTS; JURISDICTION

Sec. 1331. Federal question

"The district courts shall have **original jurisdiction** of all civil actions arising under the Constitution, laws, or treaties of the United States."

This court has original jurisdiction because: **(a).** There are Constitutional Questions, including but not limited to, **"Due Process of the Law"** and **"Equal Protection."** **(b).** The Defendant(s) have violated several Federal laws and statutes, including but not limited to TILA, sections 226.4(a) and (a)(3), 226.17,

226.17(b), 226.18(c) and 18(d); FDCPA; and RESPA, section 2607. These violations are laid out in the following pages and the mortgage audit **(Attachment R).**

### TITLE 28 > PART IV > CHAPTER 85 > § 1333

The district courts shall have original jurisdiction, exclusive of the courts of the States, of: Any civil case of admiralty or maritime jurisdiction, **saving to suitors** in all cases all other remedies to which they are otherwise entitled.

### IV. PARTIES > FRCP, Rule 17.

**Rule 17. Plaintiff and Defendant; Capacity; Public Officers: 17(a) Real Party in Interest.**

1) Designation in General. An action must be prosecuted in the name of the **real party in interest**. The plaintiff(s) have not been presented with any verifiable evidence that "TRUSTEE'S SALE NUMBER: 7104. 10845 IN CLACKAMAS COUNTY, OREGON is being prosecuted in the name of the **real party in interest.** Plaintiff(s) is a **"Real Party in Interest"** and has submitted many attachments and exhibits that support this fact. Plaintiff(s) has submitted sworn affidavits and solemn affirmations and defendant(s) have submitted nothing to prove "Standing.".

Defendant(s) have prosecuted a foreclosure action against plaintiff(s)' property and were not required to support or prove that either of them is a **"Real Party in Interest."** The plaintiff(s) have been denied **"Due Process of Law."** Will this court allow discrimination between individuals and corporations and companies, thereby denying plaintiff(s) **"Equal Protection of the Law?"**

U. S. Court decisions as cited in U.S. v. Tweel, 550 F.2d 297, 299, "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading;" U.S. v. Prudden, 424 F.2d 1021, 1032; & Carmine v. Bowen, 64 A. 932. In McNally v. U.S., 483 U.S. 350, 371-372, Quoting U.S. v Holzer, 816 F.2d. 304, 307, "Fraud in its elementary common law sense of deceit... includes the deliberate concealment of material information in a setting of fiduciary obligation have not been addressed. A public official (corporate officer) is a fiduciary toward the public,...and if he deliberately conceals material information from them he is guilty of fraud."

In Morrison v. Coddington, 662 P. 2d. 155, 135 Ariz. 480 (1983), *"Fraud and deceit may arise from silence where there is a duty to speak the truth, as well as from speaking an untruth."* In Connally v. General Construction Co., 269 U. S. 385, 391, *"...silence is... acquiescence."* At 23 Am J2d Fraud § 2; Fraud. *Deceit, deception, artifice, or trickery operating prejudicially on the rights of another, and so intended, by inducing him to part with property or surrender some legal right. Anything calculated to deceive another to his prejudice and accomplishing the purpose, whether it be an act, a word, silence, the suppression of the truth, or other device contrary to the plain rules of common honesty.* Plaintiff(s) are being denied **"Equal Protection."** The defendant(s) made a myriad of confessions and admissions when they did not respond to plaintiff(s)' affidavits and affirmations. Defendant(s)' failure to respond to any of plaintiff(s)' affidavits and affirmations and failure to prove "Standing" as a **"Real Party in Interest,"** denies plaintiff(s) **"Equal Protection"** and **"Due Process of Law."** If plaintiff(s) did not answer defendant(s)' affidavits or other forms of statements, it would surely be considered acquiescence/agreement by silence.

The defendant(s) made a myriad of confessions and admissions when they did not respond to plaintiff(s)' affidavits and affirmations. Defendant(s)' failure to respond to any of plaintiff(s)' affidavits and affirmations and failure to prove **"Standing"** as a **"Real Party in Interest,"** denies plaintiff(s) **"Equal Protection"** and **"Due Process of Law."**

The lender violated the "Statute of Frauds." The loan documents have been signed by only one party, even though the contract exceeded one year.

Attorneys are not competent fact witnesses and their statements are only hearsay. *"Statements of counsel in brief or in argument are not sufficient for motion to dismiss or for summary judgment,"* Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

**FACTS AND CORRESPONDING STATUTES THAT ENTITLE PLAINTIFF(S) TO RELIEF**

I, Morse Edward Stewart, Third Party Plaintiff, a living breathing man, affirm, depose, say and declare, under penalty of perjury, by my signature below that the following facts are true to the best of my knowledge and belief.

"Indeed, no more than (affidavits) is necessary to make the prima facie case." United States v. Kis, 658 F.2nd, 526, 536 (7th Cir. 1981); Cert Denied, 50 U.S.L.W. 2169; S. Ct. March 22, 1982.

The Third Party Plaintiff has never lived in the subject property.

There is a discrepancy between what the note says and what actually happened. The Note **(Exhibit A)** is dated April 26, 2007 and says, "In return for a loan that I <u>**have received**</u>, I promise to pay..." In other words the note says, the loan came first and then came the promissory note.

Actually the promissory note came first, on or about April 26, 2007. The loan came about seven (7) days later. May 2, 2007, was the actual funding date on H.U.D. Settlement Statement **(Exhibit D)**, **furnished** by Pacific Northwest Title of Oregon, Inc. As per admissions and confessions by defendant(s), the "Lender" sold or hypothecated plaintiff(s)' note to generate the funds for closing the transaction? Defendant(s) have admitted and confessed the plaintiff(s)' note was used to generate the funds to be used to close the transaction **(Exhibits K, M & N).** Plaintiff(s) contend this non-disclosure to plaintiff(s) is **"fraudulent"** and **voids the contract**. The defendant(s) were paid, when they sold or hypothecated plaintiff(s)' note, and have admitted and confessed to those facts **(see Exhibit K-4 item 21).**

In plaintiff(s) original complaint, plaintiff(s) cited many court decisions in regard to the necessity for any entity foreclosing on a property to <u>prove</u> it was the owner and holder of the note and deed of trust (mortgage) at the time the foreclosure was initiated in order to establish it was a **"Real Party in Interest"** and therefore had **"Standing"** to foreclose.

Plaintiff(s) signed lenders' documents below the notation "without prejudice." UCC 1-207.4: *"The Sufficiency of the Reservation: any expression indicating an intention to reserve rights is sufficient, such as "without prejudice."* UCC 1-207.7: *"The making of a valid Reservation of Rights preserves whatever*

*rights the person then possesses, and prevents the loss of such rights by application of concepts of waiver or estoppel."* Plaintiff(s) reserved right not to be compelled to perform under any contract or commercial agreement that plaintiff(s) did not enter *"knowingly, voluntarily and intentionally."* Plaintiff(s) did not *"accept the liability of the compelled benefit of any unrevealed contract or commercial agreement."*

It is apparent from plaintiff(s) many affidavits and affirmations that plaintiff(s) did not enter the agreements, with the purported lender, **knowingly,** voluntarily and intentionally and did not know of any compelled performance under any unrevealed contracts, such as comes with the use of Federal Reserve Notes (FRNS). There is no lawful, viable alternative to FRNS. Per the **Federal Reserve Bank of St. Louis,** the 2008 FRN is worth about 5 cents when compared to the value of the U.S.Dollar in 1913. 1913 is the year the Federal Reserve System was instituted. If plaintiff(s) had not reserved rights, plaintiff(s) would be compelled to perform under unrevealed contracts.

Plaintiff(s) have requested trial by jury and demanded findings of fact and separate conclusions of law in the event court disallows common law trial by jury and this was not addressed in findings and recommendations (hereinafter findings). Seventh Amendment: *"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."* If plaintiff(s) are not granted trial by jury and judge does not furnish findings of fact and separate conclusions of law, then plaintiff(s) will have been denied **"Due Process of the Law."**

Plaintiff(s)' RESPONSE, ADMINISTRATIVE AFFIDAVIT OF SPECIFIC NEGATIVE AVERMENT, OPPORTUNITY TO CURE AND COUNTERCLAIM was stamped by the court clerk, FILED' 09 JUL 28 12:35USDC-ORP.

The defendant(s) made a myriad of confessions and admissions when they did not respond to plaintiff(s)' affidavits and affirmations. Defendant(s)' failure to respond to any of plaintiff(s)' affidavits and affirmations and failure to prove **"Standing"** as a **"Real Party in Interest,"** denies plaintiff(s) **"Equal Protection"** and **"Due Process of Law."**

**JOINING OF DEFENDANTS, CORNERSTONE MORTGAGE AND BNC MORTGAGE, INC.**

CORNERSTONE MORTGAGE and BNC MORTGAGE, INC. are hereby joined in the action and are being summoned.

Plaintiff(s) interfaced with CORNERSTONE MORTGAGE but BNC MORTGAGE, INC. was brought in at or near closing and it sold the loan at or shortly after closing and both are hereby joined in the complaint and will be summoned. Plaintiff(s) are aware BNC MORTGAGE, INC., a DELAWARE CORPORATION **(Attachment S),** with its main office in IRVINE, CALIFORNIA, withdrew its authority to transact business in OREGON, June 4, 2007. **(Attachment T).** Plaintiff(s) believe BNC MORTGAGE, INC., is no longer in business and that is the reason they were not named in the original complaint.

Plaintiff(s) did not name CORNERSTONE MORTGAGE in the original complaint because CORNERSTONE MORTGAGE was not discovered on the documents, on first review, and Plaintiff(s) had forgotten that CORNERSTONE MORTGAGE was involved until this recent, later review. CORNERSTONE MORTGAGE is mentioned on the closing statement **(refer to Exhibit D-2).** Plaintiff(s) thought it would be dealing with a **"Holder in Due Course",** if that entity could ever be discovered.

A loan agent, of CORNERSTONE MORTGAGE, telephoned and offered an attractive new "fixed rate" mortgage loan for 360 months (See loan application, **Attachment U**), **"Inducement."** The loan that eventually closed **(Refer to Exhibit A)** was not as good in the "long term," as the original offer **(Attachment U)** but was a "short term" improvement over the loan that it was replacing, **"Bait and Switch."** Plaintiff(s) does not recall the agent's explanation for the changed terms. It was a "short term fix" because it had a very attractive 7.65% **"Teaser"** interest rate but that only lasted for two years. With the strong market, at the time, Plaintiff(s) was convinced by the agent, that there would be viable alternatives, if and when the variable interest rate became intolerable.

When the loan process was initiated plaintiff(s) went to the agent's office and <u>signed the loan application in blank</u>. The agent said, "This will get it started and I will fill it in when I know what we need to qualify for the loan." I do not know what happened to that application.

The mortgage note is dated April 26, 2007 and is headed ADJUSTABLE RATE NOTE **(see Exhibit A-1)**. The Uniform Residential Loan Application **(Attachment U),** <u>prepared by lender</u>, is not

signed by Plaintiff(s), is clearly for a 360 month <u>fixed rate loan</u> and is dated April 26, 2007. This is <u>the same date</u> as the date the ADJUSTABLE RATE NOTE was <u>prepared by lender</u> April 26, 2007.

No denial letter of the fixed rate loan was received by the plaintiff(s) **(Attachment R-1).**

No Preliminary disclosure of the sub-prime Adjustable Rate Mortgage Program put in at closing was received by the plaintiff(s), as required by 12 CFR, section 226.17(b) and 226.19(a) **(Attachment R-2).**

No TILA disclosure was made prior to signing closing documents **(Attachment R-2).**

No itemization of amount financed (IOAF) nor disclosure that borrowers are entitled to that disclosure in writing was given as required by 12 CFR, section 226.18(c) **(Attachment R-2).**

No good faith estimate (GFE) of the sub-prime loan was given **(Attachment R-2).**

No early TIL was given to Plaintiff(s) in violation of 12 CFR 226.17 **(Attachment R-3).**

No proper Final TIL was given at closing. The **final TIL**, in the schedule of payments, **shows a fixed rate loan (Attachment R-3)**.

Plaintiff(s) did not receive two Notices of Right to Rescind (ROR) the loan, 15 USC, 1635(a) and (b) and 12 CFR, 226.23(b) **(Attachment R-3).**

**TILA violation:** The final TIL, presented at closing, states, on page 11, item a. **(Attachment V)**, the maximum interest rate, the variable rate loan can rise to, is 13.75%. The note presented at the <u>same time</u> shows a maximum interest rate of 14.65% **(Exhibit A-2, mid page)**. These interest rates cannot both be correct **(falsifying documents).**

No preliminary disclosure of Yield Spread premium (YSP), in the amount of $4,537.30, was given to plaintiff(s), **"Unjust Enrichment."** This YSP increases the interest rate. This was unknown to plaintiff(s) because neither the GFE nor the IOAF was furnished and the resulting effect on the interest rate. This violates 12 CFR, 226.4(a) and (a) (3) and 12 CFR 226.18(d) and (c) (1)(iii) **(Attachment R-4)**.

The amount financed (AF) within the Truth in Lending Settlement Statement (TILSS) is understated by $1,072.68. This is a material violation of 12 CFR, 226.17 and 18. See also 15 USC, 1602(u). The AF must be accurate as there is <u>no tolerance</u>. Calculations:

```
Note                                        $453,750.00
Minus Hud-1 prepaid finance charges          - 9,122.52
```

| | |
|---|---|
| Remainder | 444,627.48 |
| TIL amount financed (subtract) | 443,554.80 |
| Understatement | 1,072.68 (**Attachment R-4**) |

**Unjust Enrichment**: (**Attachments R-4, 5, 6 & 7**) There is a Yield Spread Premium (YSP) that was undisclosed by broker and lender before closing. The lender paid to the broker, in this case, the YSP of $4,537.50, which in turn, increased the interest rate. The broker also received an origination fee. There is no contract between the plaintiff(s) and the broker for this YSP compensation. The plaintiff(s) has been damaged under a quasi contract by paying interest on the YSP, that the lender is not entitled to, and thereby reimbursing the broker's fee to the lender, several times over, through the added interest payments.

The legal theory is that a quasi contract, as an outgrowth of restitutionary principles, was wholly independent of the contract. Quasi contract is a body of law based on legal duty and the concept of justice. The purpose of the law is to force the defendant to give up a gain that he acquired wrongfully or that would be wrongful for him to keep. Knowledge by the recipient of a payment that has been made mistakenly is a sufficient basis for establishing a claim for **unjust enrichment**. Metropolitan Life Ins. Co. v. Solomon, 996 F. Supp. 1473 (M.D. Fla. 1998). The receipt and retention must in some fundamental sense be unjust, and what is just or unjust depends, in large measure, on the reasonable expectations of the parties to a transaction. Community Builders, Inc. v. Indian Motorcycle Assoc., Inc., 44 Mass. App. 537, 692 N.E.2d 964 (1998). If the moral principle against **unjust enrichment** is to be identified with any particular feature of our legal system, then most obviously it denotes the rules on which assets and advantages one is entitled to secure for oneself and those which it would be "unjust to acquire"—in other words it refers to the institution of property. Hedley, "Restitution: Contract Twins," p. 24, paper delivered to conference of Society of Public Teachers of Law, Sept. 9-13. 1996, Queens College, Cambridge.

Where the plaintiff has no alternative right on an enforceable contract, the basis of the plaintiff's recovery is the **unjust enrichment** of the defendant. Tull v. U.S., 481 U.S. 412, 107 S. Ct. 1831. 95 L. Ed. 2d 365, 7 Fed. R. Serv. 3d 673 (1987).

<u>Williams v. National Housing Exchange, Inc., 949 F. Supp. 650 (N.D. Ill. 1996)</u> : To state a claim for **unjust enrichment**, the plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience; the action need not contain an allegation of wrongful conduct by the defendant, but if the parties have an express contract which governs their relationship, a claim for unjust enrichment may not be maintained, even through the express contract does not cover the specific subject on which the unjust enrichment is based.

While the amount of the defendant's enrichment will frequently (perhaps usually) be identical with the amount necessary to restore the plaintiff to his former condition, this is by no means always the case. <u>Stone v. Superior Court of Los Angeles County, 214 Cal. 272, 4 P.2d 777, 77 A.L.R. 743 (1931)</u> (overruled in part on other grounds by, <u>McCall v. Superior Court in and for Imperial County, 1 Cal. 2d 527, 36 P.2d 642, 95 A.L.R. 1019 (1934))</u>.

An **unjust enrichment** claim requires receipt of a benefit and unjust retention of the benefit at the expense of another. A person is enriched if he or she receives a benefit at another's expense. <u>Restatement of Restitution § 1</u> comment: To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution. <u>Hirsch v. Bank of America, 107 Cal.App.4th 708, 132 Cal.Rptr.2d 220, 03 Cal. Daily Op.Serv. 2785, 2003 Daily Journal D.A.R. 3521.</u>

Three elements must be established in order that a plaintiff may succeed in a claim based on unjust enrichment. These elements are:

1. A benefit conferred on the defendant by the plaintiff,
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. <u>Van Gemert v. Boeing Co., 590 F.2d 433, 26 Fed R. Serv. 2d 445 (2d Cir. 1978)</u>, cert. Granted, <u>441 U.S. 942, 99 S. Ct. 2158, 60 L. Ed. 2d 1043 (1979)</u> and judgment aff'd, <u>444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676, 28 Fed. R. Serv. 2d 1053 (1980.</u>

Plaintiff(s) had a verbal agreement with the agent that his Company's only fee would be a 1% loan origination fee:

1. Defendant(s), CORNERSTONE MORTGAGE, received the YSP **(Exhibit D-2)** from the lender, in the amount of $4,537.30, but the plaintiff(s) was <u>unknowingly</u> paying for it by paying an undisclosed higher interest rate.

2. <u>Knowledge by Defendants</u>: HUD-1 closing documents show the YSP and lender paying the YSP **(Exhibit D-2)**.

3. <u>Acceptance and Retention by Defendant</u>: Lender paid the YSP and the broker retained the YSP **(Exhibit D-2)**.

The payment of this YSP is in violation of **§ 226.18(d), .18(c)(1)(iii), .4(a) & (a)(3).**

## DEMAND JUDGMENT FOR RELIEF

The contract should be ruled "null and void" and all payments made by plaintiff(s) returned to plaintiff(s) due to: (1) the many violations of TILA, RESPA and FDCPA cited above; (2) the gross amount of those violations; (3) and the likelihood that some entity, that cannot prove it was a "Real Party in Interest" when the foreclosure was instituted, took plaintiff(s) property **fraudulently** and therefore, without "Due Process of Law." "Generally, a contract made in violation of a regulatory statute is **void.**" <u>Castillo v. Barrera 146 Cal.App.4th 1317,53 Cal.Rptr.3d 494, 07 Cal. Daily Op. Serv. 799, 2007 Daily Journal D.A.R. 965.</u>

The Truth in Lending Settlement Statement (TILSS) is understated by $1,072.68. CORNERSTONE MORTGAGE, BNC MORTGAGE, INC. and Holders in Due Course, jointly and severally, should pay treble damages, which would be $3,218.04 plus cost and attorney fee.

CORNERSTONE MORTGAGE received unjust enrichment of $4,537.30. Plaintiff(s) demand treble damages $4,537.30 x 3 = $13,611.90 plus costs and attorney fees. The damages are to be paid, jointly and severally, by CORNERSTONE MORTGAGE, BNC MORTGAGE, INC. and **Holders in Due Course.**

Due to the undisclosed Yield Spread Premium (YSP) plaintiff(s) were charged an undisclosed interest rate higher than would have been the case without the YSP. The damage due from lender(s) is impossible to determine with the information available, since the <u>variance in interest rates was not</u>

disclosed. What would the interest rate have been, if the lender had not agreed to the YSP? The damage due to this should be the amount of the excess interest over the term of the loan times three, plus costs of the action and attorneys' fees. Plaintiff(s) hereby offer to settle this issue for $27,223.80 or the exact amount can be determined in discovery.

The court is to insure plaintiff(s) are awarded "Due Process of Law" and "Equal Protection," as are other land owners in other states, as laid out in the previously cited cases in plaintiff(s) original complaint.

**Falsifying documents regarding maximum interest rate the note may rise to:** Plaintiff(s) leave the award up to the discretion of the jury.

The defendant(s)' attorney, Teresa M. Shill, received plaintiff(s)' **"RESPONSE, ADMINISTRATIVE AFFIDAVIT OF SPECIFIC NEGATIVE AVERMENT, OPPORTUNITY TO CURE AND COUNTERCLAIM" on July 30, 2009.** Defendant(s) were given a twenty one (21) day opportunity to cure and directions on how to make the cure. The defendant(s) ignored plaintiff(s) again and are in default and are thereby subject to the counterclaim assessment total of seventy two million U. S. dollars (72,000,000.00). A U. S. dollar is a one ounce, .999 per cent pure silver coin not, nearly worthless, Federal Reserve (debt instrument) Promissory Notes. (Computation: Actual damages six million times three parties equal eighteen million (18,000,000.00). Punitive treble damages equal fifty four million (54,000,000.00). Total damages are the total of actual and punitive damages.

_____ November 5, 2009
Morse Edward Stewart - Secured Party Creditor - Date

## JURAT

OREGON State      )
                  ) ss.
COLUMBIA County   )

On the __5__ day of __November__, 2009 A.D., the above signed Secured Party Creditor personally appeared before me with this **SECOND AMENDED COMPLAINT PER FINDINGS AND RECOMMENDATIONS REGARDING FRAUD IN TRUSTEES' SALE NO.** 7104.10845

**AND**

**JOINING CORNERSTONE MORTGAGE AND BNC MORTGAGE, INC.,** and proved to me on the basis of satisfactory evidence and identification to be the man whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, signed under oath or asseveration, and accepts the truth thereof.

__Joann M Glass__
Notary name PRINTED

__[signature] Joann M Glass__
Notary Signature       Seal/Stamp

__Vernonia, Oregon__
Notary City and State

__November 17, 2012__
MY commission expires



OFFICIAL SEAL
JOANN M GLASS
NOTARY PUBLIC-OREGON
COMMISSION NO. 433585
MY COMMISSION EXPIRES NOVEMBER 17 2012

Page 12 AMENDED COMPLAINT

## CERTIFICATE OF MAILING

This is to certify that a complete and proper copy of the foregoing, **SECOND AMENDED COMPLAINT PER FINDINGS AND RECOMMENDATIONS REGARDING FRAUD IN TRUSTEES' SALE NO. 7104.10845 AND JOINING CORNERSTONE MORTGAGE AND BNC MORTGAGE, INC.,** was mailed on November __5__, 2009 by USPO 1st class certified mail # 7008 1140 0001 9823 4954 to:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; U.S. BANK NATIONAL ASSOCIATION;
NORTHWEST TRUSTEE SERVICES, INC.
Teresa M. Shill
C/o Routh Crabtree Olsen, P.C.
11860 SW Kerr Parkway #385
Lake Oswego, OR 97035

_Morse Edward Stewart_
Morse Edward Stewart, Secured Party Creditor
C/O 57985 Timber Road
Vernonia, Oregon 97064

### JURAT

OREGON State       )
                   ) ss.
COLUMBIA County    )

On the __5__ day of __November__, 2009 A.D., the above signed Secured Party Creditor personally appeared before me with this **CERTIFICATE OF MAILING** and proved to me on the basis of satisfactory evidence and identification to be the man whose name is subscribed to the instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, signed under oath or asseveration, and accepts the truth thereof.

__Joann M Glass__              __Joann M Glass__          Seal/Stamp
Notary name PRINTED             Notary Signature

__Vernonia, Oregon__            __November 17, 2012__
Notary City and State           MY commission expires