FILED

FEB 0 9 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MORSE E. STEWART,

CV.09-687-PK

FINDINGS AND
RECOMMENDATION

Plaintiff,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
U.S. BANK NATIONAL
ASSOCIATION; AND
NORTHWEST TRUSTEE
SERVICES, INC.
                    Defendants.

PAPAK, Magistrate Judge:

Plaintiff Morse Stewart ("Stewart"), appearing *pro se*, filed this action against Mortgage

Electronic Registration Systems, Inc. ("MERS"), U.S. Bank National Association ("U.S. Bank"),

Page 1 - FINDINGS AND RECOMMENDATION

and Northwest Trustee Services, Inc. ("NWTS"), (collectively "Defendants") in an attempt to

stop the non-judicial foreclosure of the property located at 12 Polonius St., Lake Oswego,

Oregon 97035 ("the Property"). In his second amended complaint, Stewart attempts to add

Cornerstone Mortgage ("Cornerstone") and BNC Mortgage, Inc. ("BNC") as thirty party

defendants.[1]

Presently before the court is defendants' motion to dismiss Stewart's second amended

complaint (#31). The court previously granted defendants' motion to dismiss. The court has

considered defendants' motion and all of the pleadings on file. For the reasons set forth below,

the court should grant the motion and dismiss Stewart's second amended complaint because it

fails to state a claim upon which relief can be granted. Since Stewart has already been granted

leave to amend to cure the deficiencies, the second amended complaint should be dismissed with

prejudice.

## BACKGROUND

### I.    Documents Considered in Ruling on the Current Motion

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained

in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

---

[1] It does not appear that these defendants were properly served. The Federal Rules of
Civil Procedure require that a plaintiff file proof of service with the court. FRCP 4(l). If a
plaintiff does not serve the summons and complaint within 120 days after filing the complaint,
the court "shall dismiss the action without prejudice as to that defendant or direct that service be
effected within a specified time." FRCP 4(m). The docket does not reflect that a summons
has been issued pursuant to FRCP 4(b). Stewart's certificate of service attached to the second
amended complaint indicates he mailed it only to the originally named defendants. Cornerstone
and BNC have not filed a response and do not appear to have any notice that they have been
named in this action. Thus, they are not considered in the current motion and the action is
dismissed without prejudice against them.

Page 2 - FINDINGS AND RECOMMENDATION

notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court may also consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). In addition, the court may take judicial notice of documents that are a "matter of public record." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). Here, Stewart has filed several complaints and various accompanying documents with this court relating to the foreclosure and trustee sale of the Property. The loan documents have been submitted by both sides as attachments to the documents filed in relation to the previous motion to dismiss. While not all the loan documents are attached to the current complaint and motion, I will consider them for purposes of the current motion, to the extent that their authenticity is not challenged.

## II.    Factual and Procedural Background

### A.    Procedural History

The loan documents indicate that on April 26, 2007, Stewart executed a Deed of Trust encumbering the Property, delivered to and for the benefit of MERS, as nominee for recently named defendant BNC. The Deed of Trust, instrument number 2007-037596, was recorded in Clackamas County on May 1, 2007. (Defs.' Prior Motion to Dismiss; #8, Ex. 1, at 1-15.) On October 1, 2008, Stewart defaulted under the terms of the Deed of Trust. (*Id.*, Ex. 4, at 1.) The Deed of Trust was subsequently assigned to U.S. Bank as Trustee for Structured Asset Securities

Corporation Mortgage Pass-Through Certificates, Series 2007-BC4. The assignment was recorded in Clackamas County on February 10, 2009, as instrument number 2009-008330. (*Id.*, Ex. 2.) U.S. Bank appointed NWTS as the successor and foreclosing trustee. The appointment was recorded in Clackamas County on February 10, 2009, as instrument number 2009-008331. (*Id.*, Ex. 3.) On February 10, 2009, a Notice of Default and Election to Sell, instrument number 2009-008332, was recorded in Clackamas County. (*Id.*, Ex. 4.)

On June 17, 2009, Stewart filed a complaint in this court alleging that defendants are not a "real party in interest" and therefore do not have "standing to bring this Trustee's Sale," and seeking an injunction to halt the foreclosure proceedings. (Compl.; #1, at 5, 7.) On June 18, 2009, Stewart filed a formal motion for a Temporary Restraining Order, which was denied by Judge King that same day. On June 19, 2009, the property was sold at auction to U.S. Bank. (Defs.' Prior Motion to Dismiss; #8, Ex. 5.)

On November 4, 2009, Judge King adopted this court's Findings and Recommendation granting Defendants' Motion to Dismiss and allowing Stewart leave to file a second amended complaint. On November 5, 2009, Stewart filed a Second Amended Complaint per Findings and Recommendations Regarding Fraud in Trustees' Sale No. 7104.10845 and Joining Cornerstone Mortgage and BNC Mortgage, Inc. (#29) ("Second Amended Complaint"). Defendants filed the current motion on November 19, 2009. Similar to the previous documents filed with the court, the second amended complaint is also a jumble of words, citations, and assertions that is at times difficult to parse. As best as can be discerned, Stewart seeks an order declaring the contract "null and void," a return of all payments made by Stewart to defendants, reimbursement for "unjust enrichment," a money judgment for more than $72 million, and punitive damages in the amount

of $54 million dollars. (Sec. Am. Compl.; #29, at 10-11). Stewart has filed nearly identical

pleadings regarding two different properties against many of the defendants currently named in

this suit. (Civil Case Nos. CV-09-688-PK and CV-09-1180-HU.)

### B.    Stewart's Factual Allegations

It is clear from the second amended complaint that Stewart still seeks to prove that

defendants are not a "real party in interest" and therefore did not have "standing" to foreclose,

thereby allegedly denying Stewart due process and equal protection. (Sec. Am. Compl.; #29, at

2). Stewart expressly alleges that defendants violated "TILA sections 226.4(a) and (a)(3),

226.17, 226.17(b), 226.18(c) and 18(d); FDCPA; and RESPA, section 2607." (*Id.*, at 1-2).

According to Stewart, a loan agent from Cornerstone called him and offered him an

"attractive" fixed-rate mortgage loan for 360 months. (*Id.*, at 6.) Stewart claims that the loan

that eventually closed was not as good as the original offer, but was a "short term improvement

over the loan it was replacing." (*Id.*) Stewart claims that he does not remember the agent's

explanation for the change in terms between the offer and the loan that closed. (*Id.*) Stewart

explains that the loan that eventually closed was only a "short term fix" because it had a low

"teaser" interest rate of 7.65%, that would last only for two years. (*Id.*) Stewart claims that he

was "convinced" by the agent that because of the strong market at the time, "there would be

viable alternatives, if and when the variable interest rate became intolerable." (*Id.*)

Stewart alleges that once the loan process was initiated, he went to the agent's office and

"signed the loan application in blank," because the agent told him "this will get the process

started and I will fill it in when I know what we need to qualify for the loan." (*Id.*) Stewart

claims that he never saw that application again. (*Id.*) The mortgage note, titled "Adjustable Rate

Page 5 - FINDINGS AND RECOMMENDATION

Note" is dated April 26, 2007, and is signed by Stewart. (*Id.*; Compl.; #1, Ex. A; Defs.' Prior

Motion to Dismiss; #8, Ex. 1, at 1-15.) The loan application, allegedly prepared by the lender is

for a 360 month fixed-rate loan, is not signed by Stewart, and is also dated April 26, 2007. (Sec.

Am. Compl.; #29, at 6-7, Ex. U.)

Stewart alleges that defendants committed several Truth in Lending Act ("TILA")

violations. Specifically, he claims that:

(1)    he never received notice that the fixed-rate loan was denied;

(2)    there was no preliminary disclosure of the sub-prime adjustable rate mortgage
program that was put in at closing, in violation of 12 C.F.R. §§ 226.17(b),
226.19(a);

(3)    no TILA disclosure was made prior to signing closing documents;

(4)    he was not given an itemization of the amount financed, nor given notice that
borrowers are entitled to that disclosure in writing, as required by 12 C.F.R. §
226.18(c);

(5)    there was no good faith estimate of the sub-prime loan;

(6)    no early TIL was given as required by 12 C.F.R. § 226.17;

(7)    no proper final TIL was given at closing and the final TIL, in the schedule of
payments, shows a fixed-rate loan;

(8)    the final TIL, presented at closing, shows a maximum interest rate of 13.75%
(Sec. Am. Compl.; #29, Ex. V.), while the note presented at the same time shows
a maximum interest rate of 14.65% (Compl.; #1, Ex. A.);

(9)    no preliminary disclosure of the yield spread premium ("YSP") was given, in
violation of 12 C.F.R. §§ 226.4(a), 226.4(a)(3), 226.18(d), 226.18(c)(1)(iii);

(10)   the amount financed in the Truth in Lending Statement Settlement is understated
by $1,072.68, which is a material violation of 12 C.F.R. §§ 226.17, 226.18;

(*Id.*, at 7.) Stewart further alleges that the broker and lender were unjustly enriched because of

the undisclosed YSP which increased the interest rate on the loan. (*Id.*, at 8.) He also takes issue

with an origination fee allegedly paid to the broker, claiming that he has been damaged "by

paying interest on the YSP, that the lender is not entitled to, and thereby reimbursing the

brokers's fee to the lender, several times over, through the added interest payments." (*Id.*)

Stewart also appears to allege that the loan contract is invalid for several reasons. Stewart

claims that the loan documents were only signed by one party, thereby violating the statute of

frauds. (*Id.*, at 3.) He also claims that he made a valid reservation of rights under UCC § 1-207,

namely that he "not to be compelled to perform" under the terms of any "unrevealed contracts"

because he signed the lender's documents "without prejudice," as that term is used in UCC § 1-

207. (*Id.*, at 4-5.)

## APPLICABLE LEGAL STANDARDS

### I.    Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and cannot hear every dispute presented

by litigants. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d

1221, 1225 (9th Cir. 1989). A federal district court is empowered to hear only those cases that

are within the judicial power conferred by the United States Constitution and those that fall

within the area of jurisdiction granted by Congress. *Richardson v. United States*, 943 F.2d 1107,

1112-13 (9th Cir. 1991). Original jurisdiction must be based either on a claim involving the

Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331, or on diversity of

citizenship, which applies to suits totaling more than $ 75,000 in controversy between citizens of

different states, 28 U.S.C. § 1332.

In considering a facial attack on subject-matter jurisdiction, in which a defendant

Page 7 - FINDINGS AND RECOMMENDATION

challenges the sufficiency of a pleading to establish jurisdiction in the federal courts, this court

accepts the allegations in the complaint as true and views them in the light most favorable to the

plaintiff. *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone*

*v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a 12(b)(1) motion, "the court is not

confined by the facts contained in the four corners of the complaint." *Americopters, LLC v.*

*F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

A case is properly dismissed for lack of subject matter jurisdiction when the court lacks

the statutory or constitutional power to adjudicate the case. *See, e.g., Home Builders Ass'n v.*

*City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)*; Nowak v. Ironworkers Local 6 Pension*

*Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996). "Ordinarily, a case dismissed for lack of subject

matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his

claims in a competent court." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988)

(citation omitted). However, where no other court has the power to hear the case, dismissal with

prejudice is appropriate. *See id.* The complaint of a *pro se* plaintiff is to be construed liberally

when analyzing subject matter jurisdiction. *Wolfe*, 392 F.3d at 362.

## II.    Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). "The pleading must contain

something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure

§ 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a).

In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972). However, the court need not assume the truth of the legal conclusions cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). In addition, the court may disregard allegations in the complaint if they are contradicted by facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). A *pro se* plaintiff's claims may be dismissed where it appears beyond doubt that the plaintiff can prove no set of facts in support that would entitle him to relief. *Barrett v. Belleque*, 554 F.3d 1060, 1061 (9th Cir. 2008).

## DISCUSSION

### I.    Subject Matter Jurisdiction

Defendants' motion can be construed as articulating a facial challenge to this court's subject matter jurisdiction. Federal Civil Procedure Rule 8 provides, in relevant part, as follows:

> A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support . . .

Fed. R. Civ. P. 8(a)(1).  A facial attack to a court's subject matter jurisdiction challenges the adequacy of that "short and plain statement" to support jurisdiction, assuming the truth of the statement.

### A.    Diversity Jurisdiction

A federal district court has subject matter jurisdiction of all civil actions where the matter in controversy exceeds the sum of $75,000, and the action is between citizens of different states. 28 U.S.C. § 1332.  Although there are scant facts alleged in support of Stewart's request for over $72 million in damages, I assume for the purposes of this motion that the damages sought exceed the $75,000 diversity jurisdiction requirement.

"Diversity jurisdiction requires complete diversity between the parties-each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008).  Here, although Stewart does not expressly assert his citizenship for diversity jurisdiction purposes, a Vernonia, Oregon address appears on all the documents submitted to the court.  Thus, for purposes of this motion, I assume that Stewart is a citizen of Oregon.

Despite being previously instructed by this court, Stewart fails to affirmatively allege the state of incorporation and principal place of business of each defendant.  28 U.S.C. § 1332(c)(1) (corporation deemed to be citizen of any state by which it has been incorporated and of the state where it has its principal place of business).  The closest that he comes is where he mentions that he has joined two additional defendants, Cornerstone and BNC.  (Sec. Am. Compl.; #29, at 6).  Stewart provides evidence that BNC is a Delaware corporation with its principal place of

business in Irvine, California, and has withdrawn its authority to transact business in Oregon, as

of June 4, 2007.  (*Id.*, Ex. S, T.)  Stewart further claims that he "believes" that BNC is no longer

in business.  (*Id.*)  He includes no jurisdictional facts for any of the other named defendants.

In granting the previous motion to dismiss, this court found that complete diversity does

not exist, as defendant NWTS maintains an office, conducts business from, and has a resident

agent in Oregon.  Since Stewart also resides in Oregon, complete diversity arguably does not

exist.  Even assuming that Stewart has made an intelligible claim in excess of $75,000, Stewart

has not established that the citizenship requirement has been met.  Thus, the court does not have

diversity jurisdiction.

### B.      Federal Question Jurisdiction

Stewart attempts to invoke admiralty jurisdiction as provided by the "Savings to Suitors

Clause."  The admiralty jurisdiction of the federal courts is governed by 28 U.S.C. § 1333 which

provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the
> States, of:
>> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors
>> in all cases all other remedies to which they are otherwise entitled.
>
>> (2) Any prize brought into the United States and all proceedings for the
>> condemnation of property taken as prize.

28 U.S.C. § 1333.

In determining the boundaries of admiralty jurisdiction, the court looks to the purpose of

the Congressional grant.  *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 608 (1991). The

fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce.

*Id.*; *see also Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 917 (9th Cir. 2002)

("Though not confined to vessels, admiralty naturally centers around them, as the great agents of maritime affairs."). Additionally, the "saving to suitors" clause is not an independent source of federal admiralty jurisdiction, but rather, is a statement that state courts may adjudicate maritime causes of action in proceedings where defendant is a person, not a ship or some other instrument of navigation. *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997). The saving to suitors clause also permits a plaintiff to bring an action "at law" in the federal district court, provided the requirements of diversity of citizenship and amount in controversy are met. *Id.* The subject matter of the dispute in this case is real property in Clackamas County, Oregon, and there are no facts or legal basis asserted to support admiralty jurisdiction under 28 U.S.C. § 1333.

Instead, Stewart's strongest argument for federal question jurisdiction is his allegation that defendants violated "TILA sections 226.4(a) and (a)(3), 226.17, 226.17(b), 226.18(c) and 18(d); FDCPA; and RESPA, section 2607." (Sec. Am. Compl.; #29, at 1-2). Despite indicating that "these violations are laid out in the following pages." (*Id.*) Stewart does not provide any facts or applicable subsections for his Fair Debt Collection Practices Act ("FDCPA") and Real Estate Settlement Procedures Act ("RESPA") claims. Passing references to federal statutes, without more, is insufficient to establish federal question jurisdiction. *See Polkey v. Waste Mgmt of Wa., Inc.*, No. C09-0447-JCC, 2009 WL 1936257, at *3 (W.D. Wa. July 6, 2009) (vague, ambiguous, or passing references to federal law in a complaint are not sufficient to support federal question jurisdiction); *Matthews v. Stewart*, 207 F. Supp. 2d 496, 499 (M.D. La. 2001) (casual reference to two federal statutes raised no issue of federal law and failed to establish federal question jurisdiction); *Easton v. Crossland Mortgage Corp.*, 114 F.3d 979, 982 (9th Cir.

Page 12 - FINDINGS AND RECOMMENDATION

1997) ("the mere reference of a federal statute in a pleading will not convert a state law claim into a federal cause of action if the federal statute is not a necessary element of the state law claim and no preemption exists") (per curiam).

However, with regard to his TILA claims, Stewart has cited to specific statutory provisions and made factual allegations relating to alleged violations of those statutory provisions. (Sec. Am. Compl.; #29, at 7). While the details are not entirely clear, the thrust of Stewart's pleadings is that the loan is invalid because the lender failed to give him adequate disclosure as required by TILA. According to Stewart, these disclosures were intentional and made with the purpose to defraud him. Stewart also alleges various state contract claims relating to statute of frauds, the UCC, and unjust enrichment. Drawing every inference in his favor, the court finds that Stewart presented sufficient allegations to establish a basis for federal question jurisdiction.

## II.     Failure to State a Claim for Relief

Pursuant to Rule 8, a complaint shall include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Additionally, "[e]ach averment of a pleading shall be simple, concise and direct." Fed. R. Civ. P. 8(e). If the factual elements of a cause of action are scattered throughout the complaint, but are not organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8(a) is proper. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988); *see also McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (affirming dismissal of a complaint which vaguely referred to "defendants" but failed to link factual allegations to specific defendants).

While the second amended complaint has corrected some of the deficiencies the court

Page 13 - FINDINGS AND RECOMMENDATION

previously noted, it is still a jumble of words, citations, and assertions which make little sense. Despite amending the complaint for the second time, Stewart still fails to clearly specify the legal theories upon which he relies, and fails to make any substantive allegations concerning the particular conduct of the defendants. Most importantly, Stewart still fails to clearly link which allegations are being asserted against which defendants. As such, the complaint violates Rule 8, and should be dismissed. However, because Stewart is *pro se*, the court will reach the merits of each of Stewart's claims.

### A.    TILA Claims

Stewart alleges that he entered into a consumer credit transaction wherein the lender violated TILA by failing to provide accurate disclosures. Defendants contend that Stewart's TILA damage claims are time-barred.

Violations of TILA requirements give rise to remedies of both rescission and damages. Damages claims mut be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[A]s a general rule the limitations period starts at the consummation of the transaction." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). TILA provides an initial three-day period during which consumers have an unconditional right to cancel the loan transaction for any reason. 15 U.S.C. § 1635(a). Rescission claims "shall expire three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). Where the creditor fails to provide to the consumer a notice of right to rescind and all material disclosures, TILA implementation Regulation Z provides that "the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property,

whichever occurs first."  12 C.F.R. § 226.23.

The second amended complaint alleges that the loan transaction was consummated April 26, 2007, making April 26, 2008, the deadline for commencing a TILA damages action. The current suit was not filed until June 17, 2009, well beyond the deadline. Stewart's nonrecission claims under TILA are therefore time-barred.[2]  Although Ninth Circuit has held that equitable tolling for damages may be appropriate "in certain circumstances," Stewart has not alleged any facts that would justify tolling in this case. *King*, 874 F.2d at 915; *See also Meyer*, 342 F.3d at 902-903 (dismissing equitable tolling of TILA claim because plaintiff did not allege any actions that would have prevented discovery of alleged TILA violations and was in full possession of all loan documents).

While the vast majority of Stewart's claims relate to damages, construing the second amended complaint liberally, Stewart appears to also allege damages relating to defendants alleged failure to provide to him a notice of right to rescind. The court finds that the current suit, filed on June 17, 2009, is within the three year statute of limitations period and thus, not time-barred. However, Stewart's TILA rescission claim fails because the right to rescind only arises

---

[2] To the extent Stewart is attempting to raise claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, those claims are also barred by the applicable one-year statue of limitations. *See* 12 U.S.C. § 2641; 15 U.S.C. §1692k(d). The RESPA statute of limitations generally begins to run when documents are signed, unless evidence is presented that the date of actual disclosure of actions constituting an alleged violation is different. *Meyer v. Ameriquest Mtg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Similarly, the FDCPA begins to run within one year from the "date on which the violation occurred." *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997). Here, Stewart entered into a consumer credit transaction on April 26, 2007, but he did not file the instant action until June 17, 2009. Stewart has not alleged any facts that would indicate that the alleged violations occurred at some other time than when the documents were signed. Thus, any RESPA and FDCPA claims are time-barred for the same reasons the TILA damages claim is time-barred.

when the loan transaction is secured by the debtor's "principal dwelling." 15 U.S.C. § 1635; *See Semar v. Platte Valley Federal Sav. & Loan Assn.*, 791 F.2d 699, 701 (9th Cir. 1986). Stewart unequivocally states that he has never lived in the Property (Sec. Am. Compl.; #29, at 7)., and the loan application states that the Property is an "investment" property rather than his principal dwelling (*Id.*, Ex. U at 1). Thus, Stewart does not have a right of rescission under 15 U.S.C. § 1635. Accordingly, Stewart's TILA claims should be dismissed.

### B.    Fraud

All of Stewart's allegations relate to fraud. Stewart alleges that defendants intentionally misrepresented the terms of the loan and failed to give appropriate disclosures in order to induce him into entering into a loan that was not to his benefit. Stewart captions his second amended complaint as a "Complaint Regarding Fraud in Trustees' Sale," and scattered throughout he repeatedly refers to "inducement," "concealment," "deceit," and a "bait and switch."

It is well established in this circuit that claims that are "grounded in fraud," must comply with the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-1105 (9th Cir. 2003). Rule 9(b)requires that the alleged fraud be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*, at 1106 (citations omitted). Specifically, each allegation of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged." *Id.*, *citing Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Because Stewart's allegations sound in fraud, they are subject to the heightened pleading standards of FRCP 9(b). Despite being previously instructed by this court, Stewart has again

Page 16 - FINDINGS AND RECOMMENDATION

failed to provide adequate particulars to the manner, identity, or content of the misrepresentations. While the second amended complaint is more intelligible than the previous two, Stewart has failed to make any substantive allegations concerning the particular conduct of the defendants. It is unclear who, exactly, perpetrated the alleged wrongdoing since Stewart refers to defendants collectively, and does not clearly specify who made any of the alleged misrepresentations. The only time Stewart provides any specifics is when he alleges that an "agent of Cornerstone" contacted him called him and offered him an "attractive" fixed-rate mortgage loan for 360 months. (Sec. Am. Compl.; #29, at 6.) Sometime after this initial conversation, this same agent asked Stewart to sign a blank application, telling him that "this will get the process started and I will fill it in when I know what we need to qualify for the loan." (*Id.*) While this statement is specific, it does not set forth more than neutral facts relating to the initiation of the transaction. Moreover, Stewart does not specifically identify when the statement was made or in what context, thereby preventing defendants from being able to defend against the charge.

With the exception of the above allegation, Stewart does not provide any additional specific information regarding any fraudulent interaction with any of the defendants during the loan application process or the two year period before this action commenced. Stewart has failed to allege with adequate specificity any misleading statements, who made the statements, or when they were made. Thus, Stewart has not presented facts sufficient to state a cognizable claim for fraud.

### C.    UCC Claims

While exceedingly difficult to parse, Stewart appears to be alleging that he reserved his

rights under the UCC and cannot be compelled to perform according to the terms of an

unconscionable contract. Stewart claims that because he signed the lender's documents "without

prejudice," he reserved his rights "not to be compelled to perform under any contract or

commercial agreement that [he] did not enter into knowingly, voluntarily, and intentionally," and

that he did not "accept the liability of the compelled benefit of any *unrevealed contract* or

commercial agreement." (*Id.*, at 4-5) (emphasis added). As relief, Stewart requests that the court

declare the contract "null and void." (*Id.*, at 10.)

Stewart did sign two of the loan documents "without prejudice," the Deed of Trust

(Compl.; #1, Ex. C, at 14.), and the Adjustable Rate Rider (*Id.*, Ex. C, at 18). However, beyond

citing to UCC § 1-207, Stewart has failed to allege how the UCC provides a basis for relief or a

legal theory to support his claims. He appears to be citing to UCC § 1-207 for the proposition

that by signing some of the loan documents "without prejudice" he was reserving his right not to

perform under the contract at all, in the event that the contract contained provisions which were

"unrevealed." Such a construction of the UCC is wholly misplaced, as the official comments

clearly state that the section was "not addressed to the creation or loss of remedies in the ordinary

course of performance but rather to a method of procedure where one party is claiming as of right

something which the other believes to be unwarranted." UCC § 1-207, Cmt. 2. Nor does

Stewart allege any facts that the contract is unconscionable, pursuant to UCC § 2-302 because he

has not presented any evidence that at the time of signing, the agreement was "so one-sided as to

be unconscionable under the circumstances." UCC § 2-302, Cmt. 1. In any event, Stewart's

reliance on the UCC is immaterial, as foreclosure of a deed of trust is governed by O.R.S.

Chapter 86, not the UCC. *See* O.R.S. § 86.735; *Whitus v. Countrywide Mortg., Inc.*, 2004 WL

Page 18 - FINDINGS AND RECOMMENDATION

2165362 (D.Or. September 24, 2004).  Stewart has not provided any case law for the proposition

that non-judicial foreclosures are governed by the UCC.  Further, alleged violations of the UCC

are not an independent basis for federal jurisdiction, as the UCC consists of provisions that have

been adopted into law by the Oregon legislature.  Since there are no remaining federal claims,

Stewart's UCC claims should be dismissed.

### D.    Statute of Frauds

Stewart alleges that the lender violated the statute of frauds because "the loan documents

have been signed by only one party, even though the contract exceeds one year." (Sec. Am.

Compl.; #29, at 3.)  Presumably, Stewart is referring to himself as the party who signed the loan

documents, as his signature appears on several of the attachments.  It is also unclear which of the

loan documents he is alleging are invalid.  Regardless, it is well established that a contract is

valid if signed by the party to be charged.  O.R.S. § 41.580.  Here, the party to be charged is

Stewart, and he does not appear to be challenging the authenticity of his signature, which appears

on several documents signed on April 26, 2007, including the Adjustable Rate Note, Deed of

Trust, Adjustable Rate Rider, Planned Unit Development Rider, and Prepayment Charge Rider

(Compl.; #1, Ex. A, C.)  It is meaningless that defendants' signature does not appear on all of the

loan documents.  Therefore, Stewart's statute of frauds claim should be dismissed.

### E.    Unjust Enrichment

Stewart spends several pages reciting citations to and quotes from cases meant to support

his claim for unjust enrichment.  While not at all clear, it appears as though Stewart claims that

defendants were unjustly enriched because they did not disclose the amount of the Yield Spread

Premium ("YSP"), which increased the interest rate paid by Stewart, and which was allegedly

unjustly retained by defendants. He also asserts that the payment of the YSP violated various

subsections of TILA implementation Regulation X. (Sec. Am. Compl.; #29, at 7-10.)

Under Oregon law, to state a cause of action for unjust enrichment, the plaintiff must

show that it conferred a benefit on the defendant and the defendant knowingly retained the

benefit without paying for it. *L.S. Henriksen Constr., Inc. v. Shea*, 155 Or. App. 156, 159, 961

P.2d 295 (1998). Plaintiff must also establish that it would be unjust for the defendant to retain

that benefit without paying for it. *Id.* Here, Stewart alleges no facts relating to unjust enrichment

as it relates to defendants. Instead, Stewart seems to contend that his payment of a higher interest

rate, which was allegedly unknown to him, was for the purpose of allowing Cornerstone to

receive the YSP from BNC. In support, Stewart refers to the U.S. Department of Housing and

Urban Development ("HUD") Settlement Statement, which includes the notation that a Loan

Origination Fee of 1% was paid to Cornerstone Mortgage from Stewart's funds at settlement, in

the amount of $4,537.50. (Compl.; #1, Ex. D, at 2.) However, Stewart also acknowledges that

the had a verbal agreement with Cornerstone's agent that the only fee would be a 1% loan

origination fee. (Sec. Am. Compl.; #29, at 9.) The evidence presented by Stewart appears to

undermine his claim for unjust enrichment, as he himself indicates that Cornerstone was entitled

to a 1% loan origination fee, which was paid. Thus, there was nothing unjust about the benefit

paid.

Stewart's main issue seems to be that the amount of the fee was higher than he expected,

as a result of the higher interest rate he paid. However, Stewart's confusion over the terms of his

loan agreement do not make a claim for recovery under a theory of unjust enrichment. To the

extent that Stewart's unjust enrichment claim can be construed as fraud, it fails to satisfy the

heightened pleading standards of Rule 9(b), as discussed above. Thus, Stewart's claim for unjust enrichment should be dismissed.

**F.    Admissions and Real Party in Interest**

It is clear that Stewart still contends that defendants are not a "real party in interest" and therefore did not have "standing" to foreclose. (*Id.*, at 2-3, 5.) As support, he again refers to several "confessions and admissions" allegedly made by defendants because they failed to respond to numerous affidavits sent by him, with statements advising defendants that failure to respond would be an admission of wrongdoing. (*Id.*) Despite the court's previous instruction, Stewart attempts to be continuing to use his second amended complaint as yet another attempt to compel the court to find defendants culpable of fraud based on their failure to respond to these documents. Again, Stewart has a serious misunderstanding of the rules of civil procedure and how a claim must work its way through the courts. Defendants were under no obligation to answer any of the incomprehensible documents purporting to establish "admissions" and "confessions," and they have no binding effect. Accordingly, any claims based on these purported "admissions" should be dismissed.

Further, as this court previously found, defendants production of the original Note and Deed of Trust satisfied Stewart's demand for "proof" that they had a right to proceed with the foreclosure. Moreover, the Oregon Trust Deed Act, O.R.S. § 86.705 *et seq.*, does not require presentment of the Note or any other proof of "real party in interest" or "standing," other than the Deed of Trust. Assignment and appointment of a successor trustee must be recorded in the real property records, pursuant O.R.S. § 86.735. Defendants fully complied with the statutory requirements, recording the both the assignment and appointment of a successor trustee in

Page 21 - FINDINGS AND RECOMMENDATION

Clackamas County on February 10, 2009, the assignment as instrument number 2009-008330, and the appointment of a successor trustee, as instrument number 2009-008331. (Defs.' Prior Motion to Dismiss; #8, Ex. 2, 3.) Thus, defendants have proven that they are a real party in interest and had standing to foreclose, and all Stewart's claims regarding real party in interest and standing should be dismissed.

## RECOMMENDATION

Defendants' motion to dismiss (#31) should be granted because the second amended complaint fails to state a claim for which relief can be granted, pursuant to Rule 12(b)(6). Because plaintiff has already been granted leave to amend his complaint, the case should be dismissed with prejudice against Mortgage Electronic Registration Systems, Inc., U.S. Bank National Association, and Northwest Trustee Services, Inc. Because plaintiff failed to properly summon defendants Cornerstone Mortgage and BNC Mortgage, Inc., the entire case should be dismissed without prejudice and judgment should be entered accordingly.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of February, 2010.

Paul Papak
United States Magistrate Judge

Page 23 - FINDINGS AND RECOMMENDATION